UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN COJOCAR,

        Plaintiff,

v.

        Case No. 07-13913

KENNETH MICHAEL SANDERS,

        HON. MARIANNE O. BATTANI

        Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Before the Court is Defendant Kenneth Michael Sanders' Motion for Summary Judgment. (Doc. 22). Plaintiff Carolyn Cojocar's complaint indicates that she was injured when Sanders' car struck the car she was riding in. Sanders' motion argues that summary judgment should be granted because Cojocar has not suffered a serious impairment of body function. For the reasons discussed below, the Court denies Sanders' Motion for Summary Judgment because there are genuine issues of material fact regarding whether Cojocar suffered a serious impairment of body function as a result of the accident.

### II. STATEMENT OF FACTS

In April 2002, Cojocar saw a Dr. Collazo and complained that she had low back pain that was of a 10/10 severity. On October 3, 2003, Cojocar reported to Dr. Sylvia

Boloczko, at the Oscoda Health Park, in order to establish care and obtain refills of her medications, which included Valium, Vicodin, Lasix, Soma, and Vioxx.  She complained that she had suffered chronic back pain in her lower lumbar region since around 1970.  Dr. Boloczko indicated that she believed Cojocar was "drug seeking."  A lumbar x-ray showed modest degenerative disk disease at L4/L5, spinal stenosis narrowing, and mild facet osteoarthritis at L4/L5 and L5/S1.

Cojocar testified that around April or May of 2005, she began working for Lila Allam.  She was paid $400 in cash every two weeks.  She fed and washed Ms. Allam, did her laundry, and took care of her house.  In addition, Cojocar and Ms. Allam's son picked Ms. Allam up and set her in her chair.  Cojocar lived with Ms. Allam seven days a week.  After the accident, Cojocar could no longer perform the duties the position required.

The traffic accident at issue occurred on January 13, 2006 at 5:28 p.m.  The accident was on I-75, approximately 350 feet south of Rochester Road.  The vehicle Cojocar was riding in had stopped on southbound I-75 because of a traffic backup when Sanders' vehicle struck it from behind.  The police report indicated that Cojocar had a possible injury.

Sanders testified that it was rainy on the day of the accident and traffic on I-75 was stop and go.  The vehicle with Cojocar was in front of him.  Before the accident, Sanders was driving around 20-25 miles per hour.  The vehicle with Cojocar stopped abruptly, and Sanders' vehicle hydroplaned into it when he hit his brakes.  Sanders stated that he only saw damage on the bumper of Cojocar's car.

Emergency Medical Technicians responded to the scene and recorded that Cojocar was complaining of cervical pain and tenderness. Cojocar reported that she had a history of chronic neck and back pain. Upon arriving at the hospital she reported that she was in moderate pain. X-rays of her back revealed (1) no evidence of acute fracture or dislocation; (2) moderate degenerative changes around the C5 through T1 level; (3) no cervical spine instability; (4) Grade I spondylolisthesis involving "L4 on L5;" and (5) moderate degenerative changes with at least 30% disc space narrowing seen at L4-L5 and L5-S1. Cojocar was discharged that same day, and she was "feeling much better."

Cojocar testified that, since the accident, she has to have someone else cook, do laundry, and grocery shop for her. Cojocar also stated that she used to ride bicycles, shoot darts, and go bowling; but, she can no longer do these activities.

Dr. Barry Braver, an osteopathic doctor in the field of family medicine, testified that he first saw Cojocar on March 27, 2006. She was complaining of back and neck pain from the January 13, 2006, car accident. She did not indicate to Dr. Braver that she had any history of back or neck pain before the accident. Dr. Braver had x-rays taken of Cojocar, and he believed the accident had aggravated a pre-existing back condition. He subsequently referred Cojocar to Dr. Kanwaldeep Sidhu, an orthopedic surgeon. On May 22, 2008, Dr. Braver signed a disability certificate sent to him by Cojocar's counsel. The disability certificate indicated that Cojocar had been disabled from doing housework since the date of the accident.

Dr. Sidhu testified that he first treated Cojocar on May 15, 2006. He reviewed x-rays and an MRI of her spine and determined that she had degenerative, arthritic

3

changes.  He indicated that there was no objective evidence of any kind of trauma or structural injury related to the automobile accident in her x-rays and MRI reports. Therefore, he did not fill out paperwork indicating that she needed help with household assistance and chores.  In December 2006, Dr. Sidhu gave Cojocar the option of having surgery to treat her degenerative disease.  She requested the surgery, but insurance would not cover it, and Cojocar never had the surgery.

Cojocar received physical therapy from June 22, 2006, through July 21, 2006. She complained of "difficulty sitting and standing for more than an hour, inability to walk for long distances, difficulty climbing up and down stairs, having difficulty carrying heavy load[s], inability to perform any housework chores."  She also indicated that her pain was a level 5 out of 10.  Cojocar obtained no improvement through her physical therapy.

Three Independent Medical Examinations were performed on Cojocar at the request of her first-party insurer.  Dr. Annette DeSantis examined Cojocar on December 5, 2006.  Cojocar told Dr. DeSantis that her back pain was a 10/10 all the time.  She stated that her neck pain was less severe at 7/10, but it was 5/10 with medication.   Dr. DeSantis observed that Cojocar had no acute discomfort, an even gait pattern, and was able to get on and off the examination table.  Dr. DeSantis palpated the site of Cojocar's discomfort, but was not able to corroborate the pain complaints with objective findings. Dr. DeSantis determined that Cojocar had "degenerative disease cervical and lumbar with superimposed soft tissue strain."  Cojocar was found to be capable of returning to work. Dr. DeSantis continued,

> In terms of causal relationship, this is based on her complaint that she has never before had symptoms in her neck or back.  She does have extensive arthritis in the neck and back, but this predated the accident.

4

> This is an ongoing condition.  Her injury, likely soft tissue strain would be, historically, related to the automobile accident.

Dr. Parmod Mukhi examined Cojocar on July 25, 2006.  Cojocar indicated that she was experiencing pain that was a 4/10 at that time.  Dr. Mukhi stated,

> Given the records that I reviewed as well as the time frame and the appearance of the degenerative changes, these are pre-existing and not related to the motor vehicle accident.  It does appear the patient has undergone physical therapy and given the current examination, does not have any limitations on current examination.  At this point I feel the patient has achieved a level that was present prior to this accident. . . . The patient would be able to do any work activities without the need for restrictions.

On January 31, 2007, Dr. Dale Hoekstra, an orthopedic surgeon, examined Cojocar.  During this examination he stated, "She has virtually no range of motion of her lumbar spine. . . . She cannot bend over at all.  Listing to the left and the right even the slightest amount causes excruciating pain as does hyperextension. . . . She cannot walk on her toes or her heels."  Dr. Hoekstra's impression was that Cojocar,

> has underlying degenerative changes in her cervical and lumbar spine well documented on a MRI, that there may have been some temporary exacerbation of this underlying condition as a result of the January 13, 2006, motor vehicle accident.  However, she has clearly reached maximum medical improvement from that exacerbation and any kind of treatment at the present time or surgical intervention would be related to the underlying disease process and not that temporary exacerbation.  Specifically, the surgical procedure performed by [Dr. Sidhu] is the classic treatment for degenerative spondylolisthesis at L4/5 and not for any kind of injury sustained in the January 13, 2006 motor vehicle accident. . . . I do not feel that she is in need of any kind of household or replacement services for injuries sustained in the January 13, 2006 motor vehicle accident.

On April 28, 2007, Cojocar applied for social security benefits and indicated that her last job had been at "Monty Cafe's" during 2003.

5

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.  The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

Id. at 255; see Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).

### IV.   ANALYSIS

A person is subject to tort liability for noneconomic loss caused by his use of a motor vehicle only if the injured person has suffered, among other things, a serious impairment of body function.  M.C.L. § 500.3135(1).  "'[S]erious impairment of body function' means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life."  M.C.L. § 500.3135(7).  "[I]n order for an impairment to be objectively manifested, there must be a medically identifiable injury or condition that has a physical basis."  Jackson v. Nelson, 252 Mich. App. 643, 653 (2002).  A court may decide whether an impairment is a serious impairment of bodily function as a matter of law only if either (a) there is no factual dispute concerning the nature and extent of the person's injuries, or (b) there is a factual

dispute, but it is not material to the determination of whether the person has suffered a serious impairment of bodily function. M.C.L. § 500.3135(2)(a); Kreiner v. Fischer, 471 Mich. 109, 132 (2004).

This Court cannot determine, as a matter of law, whether Cojocar has suffered a serious impairment of bodily function because there is a factual dispute concerning the nature and extent of Cojocar's injuries. See Kreiner, 471 Mich. at 132. Sanders claims that Cojocar's injuries are only symptoms of her preexisting degenerative back condition. Although there is no dispute that Cojocar had a preexisting degenerative back condition, there is evidence indicating that the accident aggravated Cojocar's back condition, causing her to suffer new symptoms. See Wilkinson v. Lee, 463 Mich. 388, 395 (2000) ("Regardless of the preexisting condition, recovery is allowed if the trauma caused by the accident triggered symptoms from that condition."). In particular, Cojocar testified that, prior to the accident, she was working as a live-in aide doing, among other things, housework. After the accident, Dr. Braver, Cojocar's treating physician, concluded that the accident aggravated her pre-existing back condition based on the medical history Cojocar gave him and his physical examination of Cojocar. When he examined Cojocar, he found that she could not stand for prolonged periods, bend, lift, or twist. Cf. Argenta v. Shahan, 135 Mich. App. 477, 489 (1984) (finding that the "Plaintiff's restricted ability to move his back is an objective manifestation of his injuries" where the plaintiff's doctor testified that the plaintiff's ability to bend, lift, twist, and turn was limited), reversed on other grounds by Ouellette v. Kenealy, 424 Mich. 83 (1985).

The defense argues that Dr. Braver's opinion should not be considered because Cojocar told him that her back started hurting after the accident and did not tell him of

7

her previous back problems. But, there is not evidence that Cojocar had back problems between her October 2003 visit to Dr. Boloczko and the January 2006 accident. Therefore, taking the evidence in the light most favorable to Cojocar, it appears that after having no significant back pain for over two years, she began experiencing back pain immediately following the accident. The fact that she appears to have not informed Dr. Braver of the back problems she had before 2004 does not render Dr. Braver's findings unworthy of consideration. Accordingly, there is evidence that she suffered from an objectively manifested condition and that Dr. Braver examined her and determined that the accident aggravated her condition. Furthermore, Dr. Braver's determination that Cojocar was disabled from doing housework following the accident indicates that Cojocar's new back symptoms affected her ability to lead her normal life. Therefore, viewing the evidence in the light most favorable to Cojocar, the Court finds that her claim survives summary judgment because there are genuine issues of material fact regarding whether the accident caused her to suffer a serious impairment of bodily function. See M.C.L. § 500.500.3135(1); Anderson, 477 U.S. at 248; Kreiner, 471 Mich. at 132.

## V. CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 22), is **DENIED.**

                s/Marianne O. Battani
                MARIANNE O. BATTANI
                UNITED STATES DISTRICT JUDGE

DATED: March 31, 2009

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                s/Bernadette M. Thebolt
                Case Manager